# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

ROY MADRID,

       Plaintiff,

vs.                                           Nos. CIV 14-0801 JB/WPL
                                                 CR 12-0128 JB

UNITED STATES OF AMERICA,

       Defendant.

## MEMORANDUM OPINION AND ORDER ADOPTING THE MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** comes before the Court on: (i) Roy Madrid's Motion to Vacate Conviction Pursuant to 28 U.S.C. § 2255, filed September 4, 2014 (Doc. 1)("Motion to Vacate"); (ii) Roy Madrid's Motion to Expedite Proceedings, filed March 30, 2016 (Doc. 21)("Motion to Expedite"); (iii) the Magistrate Judge's Proposed Findings and Recommended Disposition, filed April 7, 2016 (Doc. 22)("PFRD"); and (iv) Roy Madrid's Objections to Proposed Findings of Fact and Recommended Disposition, filed May 25, 2016 (Doc. 26)("Objections").

In his Objections, Petitioner Roy Madrid argues that the Honorable William P. Lynch, United States Magistrate Judge, applied an incorrect legal standard when recommending that the Court deny Madrid's motion. The Court overrules Madrid's Objections and adopts Judge Lynch's recommendation.  The PFRD thoroughly laid out the relevant factual and procedural background. The Court will not repeat that background here.

## LAW REGARDING PROPOSED FINDINGS AND RECOMMENDATIONS

District courts may refer dispositive motions to a Magistrate Judge for a recommended disposition.  See Fed. R. Civ. P. 72(b)(1) ("A magistrate judge must

promptly conduct the required proceedings when assigned, without the parties' consent, to hear a pretrial matter dispositive of a claim or defense . . . ."). Rule 72(b)(2) governs objections: "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Finally, when resolving objections to a Magistrate Judge's proposal, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). Similarly, 28 U.S.C. § 636 provides:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1).

"The filing of objections to a magistrate's report enables the district judge to focus attention on those issues -- factual and legal -- that are at the heart of the parties' dispute." United States v. One Parcel of Real Prop., With Bldgs., Appurtenances, Improvements, and Contents, 73 F.3d 1057, 1059 (10th Cir. 1996)("One Parcel")(quotations omitted)(quoting Thomas v. Arn, 474 U.S. 140, 147 (1985)). As the United States Court of Appeals for the Tenth Circuit has noted, "the filing of objections advances the interests that underlie the Magistrate's Act,[1] including judicial efficiency." One Parcel, 73 F.3d at 1059 (citing Niehaus v. Kan. Bar Ass'n, 793 F.2d 1159, 1165 (10th Cir. 1986); United States v. Walters, 638 F.2d 947, 950 (6th Cir. 1981)).

---

[1]Congress enacted the Federal Magistrates Act, 28 U.S.C. § 631, in 1968.

The Tenth Circuit held "that a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." One Parcel, 73 F.3d at 1060. "To further advance the policies behind the Magistrate's Act, [the Tenth Circuit], like numerous other circuits, have adopted 'a firm waiver rule' that 'provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions.'" One Parcel, 73 F.3d at 1059 (citations omitted). In addition to requiring specificity in objections, the Tenth Circuit has stated that "[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived." Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996). See United States v. Garfinkle, 261 F.3d 1030, 1031 (10th Cir. 2001)("In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived."). In an unpublished opinion, the Tenth Circuit stated that "the district court correctly held that [a petitioner] had waived [an] argument by failing to raise it before the magistrate." Pevehouse v. Scibana, 229 F. App'x 795, 796 (10th Cir. 2007)(unpublished).

In One Parcel, the Tenth Circuit, in accord with other Courts of Appeals, expanded the waiver rule to cover objections that are timely but too general. See One Parcel, 73 F.3d at 1060. The Supreme Court of the United States -- in the course of approving the United States Court of Appeals for the Sixth Circuit's use of the waiver rule -- noted:

> It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings. The House and Senate Reports accompanying the 1976 amendments do not expressly consider what sort of review the district court should perform when no party objects to the magistrate's report. See S. Rep. No. 94-625, pp. 9-10 (1976)(hereafter Senate Report); H. R. Rep. No. 94-1609, p. 11 (1976), U.S. Code Cong. & Admin. News 1976, p. 6162 (hereafter House Report). There is nothing in those Reports, however, that

demonstrates an intent to require the district court to give any more consideration to the magistrate's report than the court considers appropriate. Moreover, the Subcommittee that drafted and held hearings on the 1976 amendments had before it the guidelines of the Administrative Office of the United States Courts concerning the efficient use of magistrates. Those guidelines recommended to the district courts that "[w]here a magistrate makes a finding or <u>ruling</u> on a motion or an issue, his determination should become that of the district court, unless specific objection is filed within a reasonable time." <u>See</u> Jurisdiction of United States Magistrates, Hearings on S. 1283 before the Subcommittee on Improvements in Judicial Machinery of the Senate Committee on the Judiciary, 94th Cong., 1st Sess., 24 (1975)(emphasis added)(hereafter Senate Hearings). The Committee also heard Judge Metzner of the Southern District of New York, the chairman of a Judicial Conference Committee on the administration of the magistrate system, testify that he personally followed that practice. <u>See id.</u>, at 11 ("If any objections come in, . . . I review [the record] and decide it. If no objections come in, I merely sign the magistrate's order."). The Judicial Conference of the United States, which supported the *de novo* standard of review eventually incorporated in § 636(b)(1)(C), opined that in most instances no party would object to the magistrate's recommendation, and the litigation would terminate with the judge's adoption of the magistrate's report. <u>See</u> Senate Hearings, at 35, 37. Congress apparently assumed, therefore, that any party who was dissatisfied for any reason with the magistrate's report would file objections, and those objections would trigger district court review. There is no indication that Congress, in enacting § 636(b)(1)(C), intended to require a district judge to review a magistrate's report to which no objections are filed. It did not preclude treating the failure to object as a procedural default, waiving the right to further consideration of any sort. We thus find nothing in the statute or the legislative history that convinces us that Congress intended to forbid a rule such as the one adopted by the Sixth Circuit.

<u>Thomas v. Arn</u>, 474 U.S. at 150-52 (emphasis in original)(footnotes omitted).

The Tenth Circuit also noted, "however, that '[t]he waiver rule as a procedural bar need not be applied when the interests of justice so dictate.'" <u>One Parcel</u>, 73 F.3d at 1060 (quoting <u>Moore v. United States</u>, 950 F.2d 656, 659 (10th Cir. 1991)("We join those circuits that have declined to apply the waiver rule to a pro se litigant's failure to object when the magistrate's order does not apprise the pro se litigant of the consequences of a failure to object to findings and recommendations.")(citations omitted)). <u>Cf.</u> <u>Thomas v. Arn</u>, 474 U.S. at 154 (noting that, while "[a]ny party that desires plenary consideration by the Article III judge of any issue need only ask," a failure to object "does not preclude further review by the district judge, sua sponte or at

the request of a party, under a de novo or any other standard").  In <u>One Parcel</u>, the Tenth Circuit noted that the district judge had decided sua sponte to conduct a de novo review despite the lack of specificity in the objections, but the Tenth Circuit held that it would deem the issues waived on appeal because it would advance the interests underlying the waiver rule.  <u>See</u> 73 F.3d at 1060-61 (citing cases from other Courts of Appeals where district courts elected to address merits despite potential application of waiver rule, but Circuit Courts of Appeals opted to enforce waiver rule).

Where a party files timely and specific objections to the Magistrate Judge's proposed findings and recommendation, on "dispositive motions, the statute calls for a *de novo* determination, not a *de novo* hearing." <u>United States v. Raddatz</u>, 447 U.S. 667, 674 (1980).  "[I]n providing for a '*de novo* determination' rather than *de novo* hearing, Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations." <u>United States v. Raddatz</u>, 447 U.S. at 676 (quoting 28 U.S.C. § 636(b) and citing <u>Mathews v. Weber</u>, 423 U.S. 261, 275 (1976)).  The Tenth Circuit requires a "district court to consider relevant evidence of record and not merely review the magistrate judge's recommendation" when conducting a de novo review of a party's timely, specific objections to the magistrate's report.  <u>In re Griego</u>, 64 F.3d 580, 583-84 (10th Cir. 1995).  "When objections are made to the magistrate's factual findings based on conflicting testimony or evidence . . . the district court must, at a minimum, listen to a tape recording or read a transcript of the evidentiary hearing." <u>Gee v. Estes</u>, 829 F.2d 1005, 1008-09 (10th Cir. 1987).

A district court must "clearly indicate that it is conducting a de novo determination" when a party objects to the Magistrate Judge's report "based upon conflicting evidence or

testimony." Gee v. Estes, 829 F.2d at 1009.  On the other hand, a district court fails to meet the requirements of 28 U.S.C. § 636(b)(1) when it indicates that it gave "considerable deference to the magistrate's order."  Ocelot Oil Corp. v. Sparro Indus., 847 F.2d 1458, 1464 (10th Cir. 1988).  A district court need not, however, "make any specific findings; the district court must merely conduct a *de novo* review of the record." Garcia v. City of Albuquerque, 232 F.3d 760, 766 (10th Cir. 2000).  "[T]he district court is presumed to know that de novo review is required. Consequently, a brief order expressly stating the court conducted de novo review is sufficient." Northington v. Marin, 102 F.3d 1564, 1570 (10th Cir. 1996)(citing In re Griego, 64 F.3d at 583-84).  "[E]xpress references to de novo review in its order must be taken to mean it properly considered the pertinent portions of the record, absent some clear indication otherwise." Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42, 8 F.3d 722, 724 (10th Cir. 1993).  The Tenth Circuit has previously held that a district court properly conducted a de novo review of a party's evidentiary objections when the district court's "terse" order contained one sentence for each of the party's "substantive claims" and did "not mention his procedural challenges to the jurisdiction of the magistrate to hear the motion." Garcia v. City of Albuquerque, 232 F.3d at 766.   The Tenth Circuit has explained that brief district court orders that "merely repeat[] the language of § 636(b)(1) to indicate its compliance" are sufficient to demonstrate that the district court conducted a de novo review:

> It is common practice among district judges in this circuit to make such a statement and adopt the magistrate judges' recommended dispositions when they find that magistrate judges have dealt with the issues fully and accurately and that they could add little of value to that analysis. We cannot interpret the district court's statement as establishing that it failed to perform the required de novo review.

In re Griego, 64 F.3d at 584.

Notably, because "Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations," United States v. Raddatz, 447 U.S. at 676 (emphasis omitted), a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate," 28 U.S.C. § 636(b)(1).  See Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42, 8 F.3d at 724-25 (holding that the district court's adoption of the Magistrate Judge's "particular reasonable-hour estimates" is consistent with the de novo determination that 28 U.S.C. § 636(b)(1) and United States v. Raddatz require).

Where no party objects to the Magistrate Judge's proposed findings and recommended disposition, the Court has, as a matter of course and in the interests of justice, reviewed the Magistrate Judge's recommendations.  In Pablo v. Soc. Sec. Admin., No. CIV 11-0132 JB/ACT, 2013 WL 1010401 (D.N.M. February 27, 2013)(Browning, J.), the Plaintiff failed to respond to the Magistrate Judge's proposed findings and recommended disposition, and thus waived his right to appeal the recommendations, but the Court nevertheless conducted a review.  See 2013 WL 1010401, at *1, *4.  The Court generally does not, however, "review the PFRD de novo, because the parties have not objected thereto, but rather review[s] the recommendations to determine whether they are clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion."  Pablo v. Soc. Sec. Admin., 2013 WL 1010401, at *4.  The Court, thus, does not determine independently what it would do if the issues had come before the Court first, when there is no objection, but rather adopts the proposed findings and recommended disposition where "'the Court cannot say that the Magistrate Judge's recommendation . . . is clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion.'"  Pablo v. Soc. Sec. Admin., 2013 WL 1010401, at

*3 (footnote and internal brackets omitted)(quoting Workheiser v. City of Clovis, No. CIV 12-0485 JB/GBW, 2012 WL 6846401, at *3 (D.N.M. December 28, 2012)(Browning, J.). See Alexandre v. Astrue, No. CIV 11-0384 JB/SMV, 2013 WL 1010439, at *4 (D.N.M. February 27, 2013)(Browning, J.)("The Court rather reviewed the findings and recommendations . . . to determine if they are clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion.  The Court determines that they are not, and will therefore adopt the PFRD."); Trujillo v. Soc. Sec. Admin., No. CIV 12-1125 JB/KBM, 2013 WL 1009050, at *5 (D.N.M. February 28, 2013)(Browning, J.)(adopting the proposed findings and conclusions, and noting: "The Court did not review the ARD de novo, because Trujillo has not objected to it, but rather reviewed the . . . findings and recommendation to determine if they are clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion, which they are not.").  This review, which is deferential to the Magistrate Judge's work when there is no objection, nonetheless provides some review in the interest of justice, and seems more consistent with the waiver rule's intent than no review at all or a full-fledged review.  Accordingly, the Court considers this standard of review appropriate. See Thomas v. Arn, 474 U.S. at 151 ("There is nothing in those Reports, however, that demonstrates an intent to require the district court to give any more consideration to the magistrate's report than the court considers appropriate.").  The Court is reluctant to have no review at all if its name is going at the bottom of the order adopting the Magistrate Judge's proposed findings and recommendations.

## LAW REGARDING 28 U.S.C. § 2255 MOTIONS

A court must conduct a hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).  See United States v. Lopez, 100 F.3d 113, 119 (10th Cir. 1996).  Under

this standard, "the petitioner bears the burden of 'alleging facts which, if proved, would entitle him to relief.'"  Hatch v. Oklahoma, 58 F.3d 1447, 1457 (10th Cir. 1995)(quotation and citations omitted), overruled on other grounds by Daniels v. United States, 254 F.3d 1180, 1188 n.1 (10th Cir. 2001)(en banc).  Accordingly, if the prisoner alleges facts, which, if believed, cannot be grounds for relief, there is no need for a hearing.  See Hatch v. Oklahoma, 58 F.3d at 1457. Additionally, the petitioner's "allegations must be specific and particularized; conclusory allegations will not suffice to warrant a hearing."  Hatch v. Oklahoma, 58 F.3d at 1457 (quotation, citations, and internal punctuation omitted).  If the claims relate to occurrences in the courtroom or evidence in the record, then the Court need not conduct a hearing.  See Machibroda v. United States, 368 U.S. 487, 494-95 (1962).

## LAW REGARDING TITLE III WIRETAPS

"Federal investigatory wiretaps are governed by Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-22," and "Section 2518 sets forth the requirements for issuance of a wiretap warrant."  United States v. Verdin-Garcia, 516 F.3d 884, 889 (10th Cir. 2008).  Section 2518 requires, among other things, both probable cause and a showing of necessity, i.e., "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous."  18 U.S.C. § 2518(1)(c).  See United States v. Verdin-Garcia, 516 F.3d 889.  Section 2518 does not, however, require "exhaustion of all possibilities," and the "[t]he overall burden on the government is not great."  United States v. Verdin-Garcia, 516 F.3d at 890 (quotation and citations omitted).  "Once a wiretap has been authorized by a judge, it is presumed proper and the burden is on the defendant to prove its invalidity."  United States v. Verdin-Garcia, 516 F.3d at 890.

## LAW REGARDING INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS
## WHEN THE DEFENDANT PLED GUILTY

To succeed on an ineffective assistance of counsel claim, a defendant must show: (i) that his lawyer's performance was deficient, i.e., below the level expected from a reasonably competent attorney in criminal cases; and (ii) that he suffered prejudice, meaning that there is a reasonable probability that the result would have been different but for his lawyer's unprofessional errors. See United States v. Cruz, 774 F.3d 1278, 1284-85 (10th Cir. 2014)(citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). In the context of a defendant who pled guilty, the prejudice prong requires that the defendant "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). See United States v. Weeks, 653 F.3d 1188, 1201 (10th Cir. 2011)(quoting Hill v. Lockhart, 474 U.S. at 59). "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland v. Washington, 466 U.S. at 697.

## ANALYSIS

Madrid raises both generalized arguments and a few conclusory, but somewhat more specific arguments. Judge Lynch adequately addressed Madrid's generalized arguments. Even though Madrid raises new arguments in his Objections, he fails to do so with much specificity. Regardless, after conducting a de novo review of the more specific objections, the Court does not find any inconsistencies, materially misleading statements, or material omissions that were deliberately or recklessly made in the affidavits supporting the wiretap applications. Finally, Madrid does not show that his counsel was ineffective, because he does not show that "there is a

reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill v. Lockhart, 474 U.S. at 59.

## I.   JUDGE LYNCH'S PFRD ADEQUATELY ADDRESSED MADRID'S GENERALIZED ARGUMENTS.

Madrid argues that Judge Lynch's PFRD did not adequately address the "more than 600 pages of materials provided in support of Mr. Madrid's motion."  Objections at 5.  As evidence of this, Madrid provides the following ratio: one page of PFRD analysis per one hundred pages of record.  See Objections at 4.

The number Madrid fails to address, however, is the amount of specific inconsistencies in the wiretap affidavit he provided in his briefing, which Judge Lynch correctly tallied as zero. See PFRD at 10 ("Madrid's briefing does not assist me in considering the purported deficiencies because Madrid fails to discuss even one specific conclusion in the Ainsworth Affidavit.  One might surmise that Madrid would at least indicate the most egregious deficiency, yet Madrid fails to pinpoint it.").  A review of the pleadings demonstrates that Madrid's arguments concerning the wiretaps were exceedingly general, and his apparent tactic of attaching hundreds of pages of documents so the Court could distill arguments for him did not work.  See In re Onyeabor, 535 F. App'x 725, 731 (10th Cir. 2013)(unpublished)("Courts do not act as advocates for pro se parties, let alone those represented by counsel.")(internal citation omitted).  Madrid's charge of lack of analysis in the PFRD is problematic given his failure to provide Judge Lynch with even one specific reviewable inconsistency.

## II.  MADRID DOES NOT DEMONSTRATE THAT ANY INCONSISTENCIES EXIST.

Madrid manages to present one specific purported inconsistency in his Objections, see Objections at 6, but objections are not a means for a party to present new arguments after the

Magistrate Judge recommends an unfavorable disposition.  See Marshall v. Chater, 75 F.3d at 1426.  Said another way, Madrid is not permitted a second bite at the apple by combing through the record and presenting new arguments in his Objections that Judge Lynch was unable to consider when crafting his PFRD.  Additionally, counsel has represented Madrid through the § 2255 proceeding, and by his own words, counsel "has worked on numerous challenges to the validity of Title III wiretaps in this District," which suggests that the high-level-of-generality briefing approach was purposeful and strategic.  Objections at 13.  Regardless, the Court has thoroughly examined Madrid's new objection and concludes that it lacks a sound basis in the facts of the case and under the applicable law.

Madrid argues that the PFRD "does not address the fact that the affidavit in support of the wiretaps contains contradictions regarding the ability of the investigators into the Varela DTO to use undercover agents."  Objections at 6.  He explains that one affiant asserted that "agents are unaware of any confidential source in a position to identify or initiate contact with a source of supply" to the subjects of the investigation.  Objections at 6 (describing Affidavit of Gerald Maestas in Support of Application ¶ 101, at 63, filed August 22, 2014 (Doc. 683-2)("Maestas Aff.")).  Madrid points out that, in the same document, the United States noted that agent Gerald Maestas met with one of the subjects -- Miguel Bolivar -- and negotiated a cocaine transaction in 2009 working undercover.  See Objections at 6 (describing Maestas Aff. ¶ 38, at 21).  Madrid concludes that these two statements "cannot both be true."  Objections at 6.

The Court disagrees.  First, Madrid omits significant parts of the Maestas Aff., which explain why Maestas did not have contact with a supply source.  While describing his meeting with the subject, Maestas explains that he could not complete the transaction, because

> Bolivar and I could not come to an agreement as to where the transactions should
> take place.  In sum, Bolivar insisted that the transaction take place in a fenced

> junk yard which was located on a dead-end street.  For safety reasons, the transaction was canceled as agents would have been unable to conduct surveillance contemporaneous to the transaction.

Maestas Aff. ¶ 38, at 21.  Accordingly, Maestas never met with Bolivar, and could have even raised Bolivar's suspicions by failing to complete the transaction.  Furthermore, even if Maestas negotiated a solitary drug transaction in 2009, he may not have been in a position to initiate a second contact.  Accordingly, after conducting a de novo review, the Court concludes that these statements are not inconsistent with each other.

## III.   THE COURT OVERRULES MADRID'S ARGUMENT UNDER <u>FRANKS V. DELAWARE</u>.

Madrid's Objections cite <u>Franks v. Delaware</u>, 438 U.S. 154 (1978), for the proposition that the agents included false statements and omitted material facts from the affidavits that undermined both the probable cause and the necessity determinations.  <u>See</u> Objections at 7-10. Although Madrid's briefing before Judge Lynch does not mention <u>Franks v. Delaware</u> by name, <u>see</u> Motion to Vacate at 1-7, Madrid made conclusory arguments under its holding in his petition -- including that the application for the wiretap contained "false, internally contradictory or misleading" information, Motion to Vacate at 5.

Again, however, Madrid's briefing and Objections do not provide precise record support for his allegations.  The briefing Judge Lynch considered did not contain any specific reference to falsehoods or material omissions.  And the Objections are only marginally better.  Madrid isolated twenty-six pages for the Court to review to support the following conclusory argument:

> In Mr. Madrid's case, where the affiant made numerous false or misleading statements to the Court in order to obtain a Title III warrant, a reviewing court must excise those statements from the affidavits and applications at issue, insert material omissions, and then determine whether necessity is still shown. Additional material false statements and omissions are specifically addressed by Mr. Ainsworth in considerable detail, with pinpoint citations to the wiretap materials. *See* Aff. at 16-42, ¶¶ 28-85.

Objections at 10.

Madrid does not explain how these facts violate the law. The Court nonetheless examined the Affidavit of Gary L. Ainsworth, filed September 4, 2014 (Doc. 1-1)("Ainsworth Aff."), in an attempt to identify any misleading statements or omissions in the affidavits in support of the wiretap applications.

Ainsworth argues that the wiretap applications were misleading on the following issues: (i) the use of physical surveillance; (ii) the use of tracking devices; (iii) the examination of discarded trash; (iv) the use of search warrants; (v) the applications for a wiretap regarding one particular telephone number; and (vi) the use of other investigative techniques. See Ainsworth Aff. ¶¶ 32-86, at 16-42 (describing Application for Wiretap of (915) 727-8973 (submitted in No. 11 MR 460 MCA on July 9, 2011)("First Application"), Application for Wiretap of (808) 450-7041 & (505) 228-8041 (submitted in No. 11 MR 543 MCA on August 16, 2011)("Second Application")(collectively, "the Applications")).[2] Overall, Ainsworth's arguments largely mischaracterize the Applications, and therefore, do not demonstrate any material misrepresentations or omissions. Most importantly, Madrid does not demonstrate that the affiants made any alleged misrepresentations or omissions deliberately or recklessly. See United States v. Small, 423 F.3 at 1172 (requiring defendants to "show that any misstatements were

_____

[2]Ainsworth draws his conclusions from both the Applications and the affidavits supporting those Applications. See Ainsworth Aff. ¶ 5, at 2-4 (describing the materials he reviewed, which include the Applications and: (i) Affidavit in support of application for wiretap of (915) 727-8973, submitted by Drug Enforcement Administration (DEA) Special Agent (SA) Gerald Maestas in No. 11 MR 460 MCA (July 9, 2011); (ii) Affidavit in support of application for wiretap of (808) 450-7041 & (505) 228-8041, submitted by Drug Enforcement Administration (DEA) Special Agent Gerald Maestas in No. 11 MR 543 MCA (August 16, 2011); (iii) Affidavit in support of application for wiretap of (505) 991-9665, submitted by Drug Enforcement Administration (DEA) Special Agent Gerald Maestas in No. 11 MR 756 MCA (Nov. 2, 2011); and (iv) Affidavit in Support of Search Warrants submitted by DEA SA Gerald Maestas). Because he primarily cites the Applications, while drawing on the assertions from the supporting affidavits, the Court will use his citations to the Applications.

made knowingly, intentionally, or recklessly, and that the erroneous information was material to the district court's finding of necessity").   Although the Court will not address every one of Ainsworth's criticisms, it will describe why Ainsworth's main arguments do not demonstrate that the Applications contain any material misstatements or omissions.

Regarding the use of physical surveillance, Ainsworth criticizes the Applications for how they characterize physical surveillance.   See Ainsworth Aff. ¶¶ 32-59, at 17-29.   Ainsworth's criticisms, however, do not demonstrate that the Applications made material misstatements or omissions.   Ainsworth mischaracterizes the Applications' statements, which assert that physical surveillance is of limited value if not used in conjunction with other investigative techniques. See Ainsworth Aff. ¶ 32, at 17-18.   Contrary to Ainsworth's assertions, the Applications do not state that physical surveillance serves no value without electronic surveillance.   See Ainsworth Aff. ¶ 32, at 17-18.   Similarly, Ainsworth contends that the Applications imply that physical surveillance is used only to confirm meetings between alleged conspirators.   See Ainsworth Aff. ¶ 34, at 18-19.   Rather, they assert that physical surveillance is "generally" only effective to corroborate other indications of illegal conduct or to provide leads to further the investigation. Ainsworth Aff. ¶ 32, at 17-18.   Along the same lines, Ainsworth disagrees with the Applications' assertions that a meeting under surveillance takes on a new significance and may constitute admissible evidence when used in conjunction with electronic surveillance.   See Ainsworth Aff. ¶ 33, at 18.   He argues that "intercepted communication is not necessary for a surveillance to constitute admissible evidence."   Ainsworth Aff. ¶ 33, at 18.   Yet again, the Applications do not assert that electronic surveillance is "necessary" for evidence to be admissible.   Finally, Ainsworth argues that the Applications "refer[] to the interception of conversations as being the only technique to be used in conjunction with surveillance in order to give a new significance to

a meeting." Ainsworth Aff. ¶ 35, at 19. The Applications merely include electronic surveillance as one technique among several that can be used to give a meeting new significance. See Ainsworth Aff. ¶ 32, at 17-18. In sum, Ainsworth's arguments largely mischaracterize the Applications.

Ainsworth also criticizes some of the Applications' alleged implications. See Ainsworth Aff. ¶ 39, at 20. The Applications do not imply that officers use physical surveillance "in a vacuum" without using other techniques, nor do they suggest that physical surveillance is meritless. Ainsworth Aff. ¶ 39, at 20. Next, he argues that "intercepted communication does not, in and of itself, allow someone to determine what is happening inside a residence." Ainsworth Aff. ¶ 43, at 21. The Applications do not suggest that electronic surveillance will "in and of itself" reveal what is happening. Rather, they suggest that, when used in conjunction with other techniques, electronic surveillance will provide more information. See Ainsworth Aff. ¶ 32, at 17-18. Further, Ainsworth contends that, generally, officers can use physical surveillance in conjunction with a camera attached to a pole. See Ainsworth Aff. ¶ 44, at 22. The Applications do not allege that officers cannot generally use physical surveillance alongside a pole camera. Rather, the Applications explain that the pole camera has a limited range, and that physical surveillance is dangerous in this particular location, which "limits the utility of physical surveillance." Ainsworth Aff. ¶ 40, at 20. The United States is not required to attempt dangerous investigative techniques where doing so would be dangerous and unlikely to work. See 18 U.S.C. § 2518(3)(c)(noting that a judge can grant a wiretap application when "normal investigative procedures . . . appear to be unlikely to succeed if tried or to be too dangerous"); United States v. Small, 423 F.3d at 1172-1176.

Ainsworth then takes issue with the Applications' contentions that surveillance was difficult. <u>See</u> Ainsworth Aff. ¶ 52, at 25. He finds it contradictory that agents found it difficult to conduct physical surveillance before they could intercept communications, yet they were able to conduct physical surveillance without being detected after they could intercept communications. <u>See</u> Ainsworth Aff. ¶ 52, at 25. Ainsworth admits, however, that the affidavits asserted that physical surveillance at the particular location was "difficult," not impossible. Ainsworth Aff. ¶ 46, at 23. <u>See</u> Ainsworth Aff. ¶¶ 46-49, at 23-24. Moreover, he apparently does not consider that the electronic surveillance made physical surveillance more feasible.

Regarding the use of tracking devices, Ainsworth again mischaracterizes many of the Applications' assertions. He disagrees with the Applications' statements that one can only speculate as to what is occurring inside of a car without intercepted communications, instead arguing that other evidence can also reveal what is actually occurring. <u>See</u> Ainsworth Aff. ¶ 65, at 31. Again, the Applications do not contend that other evidence would be of no use. Similarly, it cannot be said that other evidence, like physical surveillance, would leave agents with no speculation about what is occurring inside of a vehicle. Similarly, the Applications' statements that tracking devices would not satisfy the investigation's goals do not imply that the agents would use tracking devices in a vacuum without other investigative tools, <u>see</u> Ainsworth Aff. ¶ 66, at 31, and are therefore not misleading. Nor are the Applications misleading when they contend that it would be dangerous to install a tracking device on each of the subjects' many vehicles. <u>See</u> Ainsworth Aff. ¶ 67, at 31. As mentioned above, the United States is not required to attempt to install tracking devices on so many vehicles where doing so would be dangerous and unlikely to work. <u>See</u> 18 U.S.C. § 2518(3)(c)(noting that a judge can grant a wiretap

application when "normal investigative procedures . . . appear to be unlikely to succeed if tried or to be too dangerous"); United States v. Small, 423 F.3d at 1172-1176.

Regarding the examination of discarded trash, Ainsworth argues that the Applications' contentions are misleading.  See Ainsworth Aff. ¶¶ 68-71, at 32-ee.  Once again, however, the Applications do not assert that pulling and examining the trash would be impossible, but instead assert that it would be difficult, dangerous, and run the risk of compromising agents while in the act of collecting the discarded trash.  See Ainsworth Aff. ¶ 68, at 32.  Consequently, the Applications are not materially misleading regarding the examination of discarded trash.

As for the use of search warrants, Ainsworth argues that the affidavits imply that search warrants would be useless.  See Ainsworth Aff. ¶¶ 72-79, at 34-39.  The Applications instead "detail the numerous inadequacies of search warrants."  Ainsworth Aff. ¶ 72, at 34 (emphasis added).  Nowhere do the Applications contend that search warrants would provide no information.  To validly obtain a wiretap, the Applications need only demonstrate that "normal investigative procedures . . . reasonably appear to be unlikely to succeed if tried."  United States v. Small, 423 F.3d at 1172.  Because the Applications address the numerous inadequacies of using search warrants rather than contend that search warrants were useless, they do not materially misrepresent the facts.  Furthermore, Ainsworth repeatedly argues that the Applications' reasons for findings search warrants inadequate are common, and can be cured by turning to other investigative techniques.  See Ainsworth Aff. ¶¶ 72-79, at 34-39.  The Applications make clear, however, that the investigative techniques that Ainsworth mentions would not work very well in this particular case.  See Ainsworth Aff. ¶ 72, at 34-35.  Consequently, the Applications' statements concerning search warrants were not materially misleading.

On the First Application's assertion that Defendant Homero Varela provides a certain telephone number to the general public for legitimate purposes, Ainsworth does not demonstrate any false or misleading statements by showing that Varela answered a telephone call from a confidential source.  See Ainsworth Aff. ¶¶ 80-82, at 39-40.  Even if Varela answered the call, he could still have used this telephone number for legitimate purposes as the First Application asserts.  Accordingly, the First Application does not materially misstate the facts.

Last, Ainsworth's descriptions of four traffic stops, where agents discovered drugs and contraband, do not demonstrate any false or misleading statements or omissions.  Ainsworth does not show how traffic stops would have enabled the agents in this case to accomplish their investigation's goals.  See United States v. Small, 423 F.3d at 1172 (requiring the affiant to show that normal investigative procedures have failed or appear unlikely to succeed to obtain a wiretap).  Nor does Ainsworth assert that the United States omitted this evidence, as he obtained the information about the traffic stops from affidavits that supported the Applications.  See Ainsworth Aff. ¶ 84, at 40-41.  Accordingly, the availability of traffic stops does not show that the agents misstated the wiretap's necessity or omitted any material facts.  See United States v. Simpson, 813 F.2d 1462 (9th Cir. 1987).

In addition to failing to apply the facts to the law, Madrid does not discuss whether the affiants knowingly or recklessly included false information.  See United States v. Hall, 473 F.3d 1295, 1301 (10th Cir. 2007)("[A] defendant may challenge a facially sufficient affidavit on the ground that the police included deliberate or reckless falsehoods that were material to the district court's finding that the wiretaps were necessary.").  The Tenth Circuit requires a defendant to "show that any misstatements were made knowingly, intentionally, or recklessly, and that the erroneous information was material to the district court's finding of necessity."  United States v.

Small, 423 F.3 at 1172.   Madrid did not provide any evidence indicating that the affiants knowingly or recklessly included false information.   Madrid did not even argue that they did so knowingly or recklessly.   In conclusion, after conducting a de novo review, Ainsworth's statements do not demonstrate that the affiants knowingly or recklessly included false information that is material to the probable cause determination.   See United States v. Kennedy, 131 F.3d 1371, 1376 (10th Cir. 1997).   Madrid's Franks v. Delaware argument lacks a sound basis in the facts of this case and under the applicable law.

## IV.   MADRID'S FRUIT-OF-THE-POISONOUS TREE STATEMENT OF LAW IS INAPPLICABLE.

Madrid argues that Judge Lynch's statement that, "even if the first wiretap is invalidated, 'the United States would likely have ample remaining evidence, including information from the other wiretaps . . . .'" Objections at 10 (citing PFRD at 12), is incorrect under the fruit-of-the-poisonous tree doctrine, which "allows a defendant to exclude evidence 'come at by exploitation' of violations of his Fourth Amendment rights," United States v. Jarvi, 537 F.3d 1256, 1259 (10th Cir. 2008)(quoting Wong Sun v. United States, 371 U.S. 471, 487-88, (1963)).

Although Madrid's statement of the law is correct, his assertion about its application to this case is not correct, because there is no poisonous tree.   That is, the first wiretap warrant was proper, so there is no derivative evidence to exclude, so the statement of law becomes irrelevant here.   Accordingly, the fruit-of-the-poisonous tree doctrine does not apply, because the first warrant was valid.

## V.   MADRID'S ATTEMPT TO DISTINGUISH UNITED STATES V. VERDIN-GARCIA IS UNPERSUASIVE.

The remainder of Madrid's Objections assert that Judge Lynch's reliance on United States v. Verdin-Garcia, 516 F.3d 884 (10th Cir. 2008), for the statement of law in his PFRD

regarding federal investigatory wiretaps, does not properly capture the United States' burden under the wiretap statute, see 18 U.S.C. § 2518. See Objections at 12. Madrid provides a lengthy discussion of what he believes is the relevant law, including a dissenting opinion from a Supreme Court case, treatise excerpts, decisions from other Courts of Appeals, a United States Senate Committee Report, the statute itself, and other Tenth Circuit cases. See Objections at 12-27. Yet Madrid's arguments lack a sound basis in the facts and in the appellate law for three primary reasons: (i) he does not specifically distinguish United States v. Verdin-Garcia; (ii) he does not apply his reconstituted legal standard to this case's facts; and (iii) he does not connect his reconstituted legal standard to the applicable standard of review under Hill v. Lockhart for ineffective assistance of counsel claims in a § 2255 petition.

### A. MADRID FAILS TO DISTINGUISH UNITED STATES V. VERDIN-GARCIA.

Madrid cites no case that specifically contradicts the necessity requirement in United States v. Verdin-Garcia upon which Judge Lynch relied for his PFRD. The portion of United States v. Verdin-Garcia that Madrid disputes is as follows:

> The necessity requirement is not to be treated hypertechnically. We expect the government to act "in a common sense fashion," and on review we will take in "all the facts and circumstances in order to determine whether the government's showing of necessity is sufficient to justify a wiretap." Ramirez–Encarnacion, 291 F.3d at 1222 (internal quotation marks omitted). The overall burden on the government "is not great." United States v. Wilson, 484 F.3d 267, 281 (4th Cir. 2007)(internal quotation marks omitted); United States v. McLee, 436 F.3d 751, 763 (7th Cir. 2006) (internal quotation marks omitted); United States v. Armocida, 515 F.2d 29, 38 (3d Cir. 1975).

516 F.3d at 890. Madrid does not directly address United States v. Verdin-Garcia in his Objections but instead cites persuasive authority and non-contradictory, mostly older Tenth Circuit authority in an apparent attempt to distinguish it. Judge Lynch's reliance on United States v. Verdin-Garcia is proper, because it is controlling Tenth Circuit precedent, it is a recent

case, it has not been distinguished, and it cites decisions from three separate Courts of Appeals when discussing the United States' burden.

Relatedly, Madrid argues that Judge Lynch's statement that "the agent provided adequate explanation and reasoning in his affidavits" does not meet the "considerably stricter" standard under Title III.  Objections at 13 (citing PFRD at 10).  Yet under United States v. Verdin-Garcia -- which articulated a non-hypertechnical, "common sense" necessity requirement showing by the United States, 516 F.3d at 890 -- the Court does not agree that Judge Lynch's statement demonstrates that he applied an incorrect legal standard.  Even if Madrid were correct, he must do more than simply provide a more precise legal standard to prevail.  He must apply the legal standard to the facts, which he did not do.

### B. MADRID DOES NOT APPLY HIS LEGAL STANDARD TO THE FACTS OF THIS CASE.

Just as Madrid does not specifically address United States v. Verdin-Garcia, his discussion of the problems with the United States' necessity showing also does not specifically address this case's facts.[3]  Madrid cites thirty-five pages of the record to support his conclusory statement that "Mr. Ainsworth's affidavit detailed numerous instances where the government failed to show necessity for the wiretap.  See Ainsworth Aff. at 7-42, ¶¶ 10-85."  Objections at 22.  Madrid's Objections later identify one specific paragraph purporting to show "instances where the government's claim of necessity was not specific to the Varela DTO, but to drug trafficking organizations in general.  See Ainsworth Aff. at 23, ¶ 49a."  Objections at 25.  Citing

---

[3]Over the Court's thirteen years on the bench, it has overseen hundreds if not thousands of criminal cases, many involving wiretaps.  Very seasoned lawyers have examined wiretap applications and chose not challenge them, largely because of their specificity.  Like the previous wiretap cases, this case involved fifteen defendants, only one of whom chose to challenge the wiretap.  By choosing to challenge the wiretap, Madrid must be precise.  He cannot merely describe a legal standard, point to 600 pages of documents, and ask the Court to make legal arguments for him.  He must instead show the Court what everyone else allegedly missed.

this paragraph alone is insufficient, because Madrid did not raise this argument in the briefing that Judge Lynch considered, and Madrid did not provide legal analysis tying paragraph 49a to the standard of review.  See Marshal v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are also deemed waived.").

Regardless, the Court examined the paragraph and determines that it does not defeat the finding of necessity.  First, the Applications did not rely "on generalities" about drug trafficking organizations in general.  The Applications give a thorough and detailed explanation of why physical surveillance is difficult at various locations involved in this particular drug trafficking organization.  See Ainsworth Aff. ¶¶ 46-49, at 23-24 (acknowledging the reasons that physical surveillance is difficult).  As for the surveillance at 6704 Coors Boulevard SW, the Applications clearly explain that physical surveillance is difficult, because subjects of this particular investigation would be likely to discover law enforcement.  See Ainsworth Aff. ¶ 49a, at 23-24. Moreover, the Applications provided numerous other specific and detailed reasons why the wiretap was necessary.  Accordingly, the Applications met the necessity requirement.

### C.   MADRID FAILED TO APPLY THE HILL V. LOCKHART INEFFECTIVE ASSISTANCE STANDARD.

Perhaps the largest deficiency in the Objections is that Madrid does not apply the correct standard of review for ineffective assistance of counsel under Hill v. Lockhart, which requires that a defendant who pled guilty meet a modified Strickland v. Washington prejudice prong by showing that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill v. Lockhart, 474 U.S. at 59.

Madrid repeatedly cites Strickland v. Washington, see Motion to Vacate at 3, 5; Objections at 26, but does not cite the controlling case, Hill v. Lockhart, decided one year later. There, the Supreme Court expanded Strickland v. Washington as follows:

> We hold, therefore, that the two-part Strickland v. Washington test applies to challenges to guilty pleas based on ineffective assistance of counsel. In the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence already set forth in Tollett v. Henderson, supra, and McMann v. Richardson, supra. The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

Hill v. Lockhart, 474 U.S. at 58-59.  United States v. Weeks, a recently decided Tenth Circuit case, tied together Strickland v. Washington and Hill v. Lockhart as follows:

> When a habeas petitioner challenges his guilty plea on the ground that he was denied his Sixth Amendment right to effective assistance of counsel, he must satisfy two criteria to show entitlement to relief.  First, he must show that his counsel's representation "fell below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 688 . . . (1984).  Second, he "must show that the deficient performance prejudiced the defense."  Id. at 687 . . . ; see also Hill v. Lockhart, 474 U.S. 52, 56-58 . . . (1985); United States v. Harms, 371 F.3d 1208, 1211 (10th Cir. 2004).  To demonstrate prejudice, the petitioner "must show that there is a reasonable probability that, but for the counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59 . . . .

United States v. Weeks, 653 F.3d at 1200-01.

Madrid's briefing and Objections do not correctly address the prejudice prong, because Madrid does not state that there is a reasonable probability that he would have insisted on going to trial but for counsel's constitutionally deficient representation.  Instead, Madrid's arguments focus on the trial counsel's failure to challenge the wiretap's validity -- a failing that, even if true, does not by itself meet the Hill v. Lockhart standard.

For example, Madrid phrases his argument in his Motion to Vacate as follows:

Case 1:14-cv-00801-JB-WPL   Document 27   Filed 06/30/16   Page 25 of 28

> Mr. Madrid's conviction and sentence violate the Sixth Amendment to the United
> States Constitution due to ineffective assistance of [trial counsel], who failed to
> challenge the admissibility of evidence obtained as a result of interception of
> electronic communications.  At an evidentiary hearing, Mr. Madrid intends to
> show (1) [trial counsel's] performance was deficient, *i.e.*, that it fell below an
> objective standard of reasonableness for an attorney in a case of this type, see
> Strickland v. Washington, 466 U.S. 668, 687 (1984), and (2) that but for trial
> counsel's omissions and deficient performance, there is a reasonable probability
> that the outcome of the proceedings in this case would have been different, *i.e.*,
> that there is a reasonable probability that a challenge to the wiretap would have
> been successful, resulting in the suppression of the evidence upon which the
> indictment and the plea were based.  Even if complete success might not have
> occurred, there is a reasonable probability that significant weakness in the
> Government's case would have been exposed through a vigorous challenge to the
> wiretap in this case, likely resulting in a more favorable plea agreement with a
> significantly lower prison sentence.

Motion to Vacate at 2-3.  "[A] more favorable plea agreement with a significantly lower prison

sentence" Motion to Vacate at 3, is not akin to "a reasonable probability that, but for counsel's

errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial,"

Hill v. Lockhart, 474 U.S. at 59.  Madrid's Motion to Vacate treats his guilty plea as a foregone

conclusion, while Hill v. Lockhart requires the petitioner to allege "sufficient support" in his

petition for a reasonably probable desire to proceed to trial, United States v. Weeks, 653 F.3d at

1205.  Here, Madrid makes no mention of proceeding to trial.[4]

Judge Lynch discussed Hill v. Lockhart in his PFRD, see PFRD at 12, yet Madrid does

not address Hill v. Lockhart in his Objections.  Because Madrid does not address the prejudice

---

[4]The standard Madrid must meet to collaterally attack his sentence is high.  He must not
only show that his lawyer's performance was deficient, but also that there is a reasonable
probability that the result would have been different but for his lawyer's errors.  See United
States v. Cruz, 774 F.3d at 1284-85.  Madrid does not meet that standard.  The Court presided
over the entire multi-defendant litigation, and notes that it would not have suppressed the
evidence based upon Ainsworth's review.  Ainsworth largely criticizes another police officer and
argues how he would write a more precise affidavit.  Being able to write a marginally more
precise affidavit, however, does not demonstrate that the Court would suppress the evidence.

- 25 -

prong as <u>Hill v. Lockhart</u> requires, he has not shown prejudice, and his claim for ineffective assistance of counsel does not succeed.

In conclusion, regarding Madrid's generalized and conclusory complaints, <u>see, e.g.</u>, Objections at 3 (arguing that the entire PFRD was "cursory"), Objections at 12 (arguing that Judge Lynch ignores "decades of Title III jurisprudence" and likely expended "insufficient effort"), which are not proper objections, <u>see</u> <u>Bojorquez-Villalobos v. United States</u>, 2015 WL 1006366, at *2 (D.N.M. Feb. 27, 2015)(Browning, J.)("Objections must be made with specificity; general or conclusory objections are insufficient.")(citing <u>One Parcel</u>, 73 F.3d at 1060-61); <u>One Parcel</u>, 73 F.3d at 1059-60 (noting that the district court will only consider objections that are "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute," and concluding that "the objections filed by appellants here were not sufficiently specific to preserve any issue for appellate review"), Madrid has waived his right to have the Court conduct a de novo review of those generalized objections. Nonetheless, the Court conducted enough of a review to determine that Judge Lynch's findings and recommended disposition in the PFRD are not clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion.[5] <u>See</u> <u>Chelsek v. Bank</u>, 2016 WL 3148398, at *6 (D.N.M. May 19,

---

[5]As noted above, Madrid does not identify any specific failings in the PFRD. Instead, he criticizes Judge Lynch's overall review, and asks the Court to "delv[e] into the details" of the "approximately 600 pages" of "motion[s], affidavits, and supporting exhibits" "that were ignored by the magistrate." Objections at 4, 7. Accordingly, the Court scrutinized the PFRD to determine whether it was sufficient, and concludes that Judge Lynch properly analyzed the materials that Madrid attached in support of his § 2255 Motion, even if Judge Lynch's PFRD does not discuss all of them. The Court did not, however, analyze all of the hundreds of pages of supporting exhibits that Madrid included with his Motion in determining whether Judge Lynch properly analyzed the documents.

Regardless, the Court performed a de novo review of the following documents in determining whether the supporting materials contained any misleading or inconsistent statements: (i) the Objections; (ii) the Motion; (iii) the Ainsworth Aff.; (iv) the Curriculum Vitae of Gary L. Ainsworth, filed September 4, 2014 (Doc. 1-2); (v) the Maestas Aff.; (vi) Photographs and Screenshots of 7112 Las Nutrias Rd. NW (Exhibit 22), filed September 4, 2014 (Doc. 2-1);

2016)(Browning, J.).  Regarding any specific objections that pointed the Court to specific record

evidence, the Court reviewed de novo the "the relevant evidence of record" and the portions of

the PFRD to which Madrid objected.  In re Griego, 64 F.3d at 583-84.[6]  Because the Objections

_____

(vii) Photographs and Screenshots of 6704 Coors Blvd. SW (Exhibit 23), filed September 4, 2014 (Doc. 2-2); (viii) Photographs and Screenshots of 2538 Verde Rd. SW (Exhibit 24), filed September 4, 2014 (Doc. 2-3); (ix) the Applications and supporting affidavits; (x) the PFRD; (xi) the Motion to Expedite; (xii) the United States' Motion to Enforce Limited Waiver of Collateral Attack in Plea Agreement and Memorandum in Opposition to Motion to Vacate Conviction, filed January 23, 2015 (Doc. 19)("Motion to Enforce"); and (xiii) the Affidavit of Charles E. Knoblauch, filed October 14, 2014 (Doc. 15).  Some of the exhibits Madrid provided were not entirely legible.  See, e.g., Description of Long-Range Cameras (Exhibit 27), filed September 7, 2014 (Doc. 6-1); Exhibit 6, filed September 7, 2014 (Doc. 5).  That the Court conducted this review in a shorter period than the time in which Judge Lynch considered all of the documents indicates that Judge Lynch was able to thoroughly consider the documents.

The Tenth Circuit does not require the Court to conduct such an extensive review when a movant does not specifically make his or her objections, and it certainly does not require more review than the Court conducted.  In Moore v. Astrue, 491 F. App'x 921 (10th Cir. 2012), the Tenth Circuit explained that the plaintiffs in One Parcel filed objections in which they asked the district court to "reconsider a magistrate judge's R & R 'based on the motions, exhibits, testimony, briefs, and arguments' they had previously submitted to the court."  491 F. App'x at 923.  The Tenth Circuit "held this general objection was insufficient to avoid application of the firm waiver rule."  491 F. App'x at 923.  In the same way, Madrid expressly asks the Court to reconsider Judge Lynch's PFRD based on the motions, affidavits, and supporting exhibits that he previously submitted.  See Objections at 7.  Accordingly, the Court did not conduct a de novo review of all of the exhibits and affidavits.  Moreover, whenever Madrid referred to a specific attachment, even if he did not include precise page numbers or legal arguments, the Court thoroughly reviewed the document in its entirety.

[6]Judge Lynch determined "that Madrid's ineffective assistance claim falls outside the scope of the [Plea Agreement's] waiver" of collateral attacks.  PFRD at 6.  The United States did not file any objections.  To file a collateral attack for ineffective assistance of counsel in spite of a waiver, the Tenth Circuit has said that the ineffective assistance of counsel claim "must bear more than a tangential relationship to the plea agreement waiver."  United States v. Masters, 317 F. App'x 750, 755 (10th Cir. 2009).  Judge Lynch concluded that Madrid sufficiently tied his counsel's failures to his decision to plead guilty.  See PFRD at 6 (describing Jackson v. United States, 252 F. App'x 918, 921 n.2 (10th Cir. 2007), in which the Tenth Circuit affirmed the district court's holding that the petitioner's motion fell outside the waiver because his "ineffective assistance of counsel claim directly ties his attorney's conduct in failing to file a motion to suppress to the advice the attorney provided him in connection with his decision to plead guilty").  Although the Court might not have arrived at the same conclusion on a clean slate, because neither the United States nor Madrid object to the PFRD's position, the Court determines that Judge Lynch's findings and recommended disposition in the PFRD are not

lack a sound basis in the case's facts and in the applicable law, the Court will adopt the PFRD as its own.

**IT IS ORDERED** that: (i) the Magistrate Judge's Proposed Findings and Recommended Disposition, filed April 7, 2016 (Doc. 22), is adopted; (ii) the Petitioner Roy Madrid's Motion to Vacate Conviction Pursuant to 28 U.S.C. § 2255, filed September 4, 2014 (Doc. 1), is denied; (iii) the Petitioner's Motion to Expedite Proceedings, filed March 30, 2015 (Doc. 21), is granted, although granting the motion has no effect on the Court's resolution of the merits of the case; and (iv) Roy Madrid's Objections to Proposed Findings of Fact and Recommended Disposition, filed May 25, 2016 (Doc. 26), are overruled.  A certificate of appealability is denied and the case is dismissed with prejudice.

_____
UNITED STATES DISTRICT JUDGE

*Parties and counsel*:

Scott Moran Davidson
Law Offices of Scott Moran Davidson
Albuquerque, New Mexico

     *Attorney for the Plaintiff*

Damon P. Martinez
  United States Attorney
Jonathon Gerson
Reeve Swainston
  Assistant United States Attorneys
U.S. Attorney's Office
Albuquerque, New Mexico

     *Attorneys for the Defendant*

---

clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion, and will not disturb his conclusion.